IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02490–PAB–KMT

JOSEPH LOUIS DURAN,

      Plaintiff,

v.

JOAN KOPRIVNIKAR, M.D.,
DENEEN CRANDELL, PSY. D., and
SGT. LEE MARTINEZ, RETIRED,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case involves civil rights claims by an inmate incarcerated within the Colorado Department of Corrections.  The matter comes before the court on Defendants' "Motion to Dismiss Plaintiff's Prisoner Complaint (Doc. #3)." (Doc. No. 24.)  For the following reasons, the court recommends that the Defendants' Motion to Dismiss be GRANTED.

### STATEMENT OF THE CASE

      The following description is taken from Plaintiff's Prisoner Complaint (Doc. No. 3 [Compl.]) and the parties' submissions with respect to this Recommendation.  Plaintiff is incarcerated at the San Carlos Correctional Facility (SCCF).  His Complaint describes four claims.

First, Plaintiff asserts that Defendant Hernandez admitted Plaintiff to SCCF on September 29, 2008.  He claims that, because he refused to sign property and orientation papers, Defendant Hernandez placed him in handcuffs and secured him in a cell and refused to remove the handcuffs even when Plaintiff indicated he needed to use the restroom so Plaintiff was forced to defecate on himself and the jumpsuit.  Plaintiff also claims that Defendant Hernandez boasted that he was in charge of canteen and that on October 31, 2008, $54.00 of canteen was missing from the property returned to Plaintiff.

Second, Plaintiff asserts that he was evaluated upon arrival at SCCF and that Defendants Crandell, Koprivnikar and Martinez were present at this evaluation.  He claims that he refused to communicate verbally at this evaluation but indicated he was willing to write.  Because he refused to talk, Plaintiff claims that Defendants first placed him in full restraints and then placed him in a strip cell.  He alleges that while he was in restraints and in the strip cell, he was prevented from communicating with his criminal attorney, the state district court and his family.  He also claims that, while in restraints, he was forced to urinate and defecate in a diaper and on himself, was denied a shower for up to six days at a time, and was housed in a secure cell without toilet paper.

Third, Plaintiff alleges that, on one occasion while he was restrained, Defendant Atwood denied dinner to Plaintiff because Plaintiff wanted to wash his hands before eating but would not communicate this verbally.

Finally, Plaintiff alleges that Defendant Koprivnikar condoned the torture of Plaintiff as ordered by Defendant Crandell and placed Plaintiff on involuntary drugs.  He asserts that as a

result of the involuntary drugs, he suffers side effects, including muscle tremors, memory loss, headaches, chest pains and blurry eyesight and that, despite medication for the muscle tremors, they persist.  Plaintiff also claims that the administration of involuntary drugs makes him ineligible for a halfway house or a change of facility.

Plaintiff invokes the Fifth, Sixth and Eighth Amendments.  He seeks a declaratory judgment, attorney's fees,[1] court costs, approximately $2,000,000 in declaratory and punitive damages, and "Defendant's Mental Health records picked-up for shredding."  (Compl. at 12.)

## PROCEDURAL BACKGROUND

Plaintiff filed his complaint on October 13, 2010.  (Doc. No. 3.)  On November 11, 2010, the District Court dismissed Claims One and Three and Defendants Hernandez and Atwood, pursuant to 28 U.S.C. § 1915(e)(2)(b)(i).  (Doc. No. 9.)  Accordingly, only claims Two and Four and Defendants Koprivnikar, Crandell and Martinez remain.  On January 24, 2011, Defendants Koprivnikar, Crandell and Martinez (Defendants) filed a Motion to Dismiss arguing that 1) Defendants, in their official capacities, are entitled to Eleventh Amendment immunity from monetary damages and declaratory relief, 2) Plaintiff failed to state cognizable claims for access to the courts or deliberate indifference, 3) Defendants, in their individual capacities, are entitled to qualified immunity, and 4) the Prison Litigation Reform Act (PLRA) bars Plaintiff's claim for compensatory damages.  (Doc. No. 24 [Mot.].)  Plaintiff filed a response on February 8, 2011.

---

[1] Plaintiff has proceeded *pro se* since the inception of this action.

3

(Doc. No. 39 [Resp.].)  Defendants did not reply.  The motion is ripe for review and recommendation.

## LEGAL STANDARD

*1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

*2.*     *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule

12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination

that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction

rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th

Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise

jurisdiction when specifically authorized to do so).  The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d

906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of

the proceedings in which it becomes apparent that jurisdiction is lacking."  *Id.*

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v.*

*Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

### 3.      *Failure to State a Claim Upon Which Relief Can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies the allegations in the complaint that are not entitled to the assumption of truth, that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing

*Twombly*, 550 U.S. at 555).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citations omitted).

## ANALYSIS

### 1.    *Eleventh Amendment Immunity*

Plaintiff's Complaint does not specify whether Defendants are sued in their official or individual capacities.  Defendants argue that, in their official capacities, they are entitled to Eleventh Amendment immunity from Plaintiff's claims for monetary and declaratory relief. (Mot. at 4.)

The Eleventh Amendment "constitutes a bar to the exercise of federal subject matter jurisdiction."  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2009).  It states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Amendment has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer, v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the

7

official's office and therefore is no different from a suit against the state itself.  *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989).  Moreover, a § 1983 action may only be brought

against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official

capacity for monetary damages or retrospective equitable relief are persons within the meaning

of § 1983.  *Will*, 491 U.S. at 70-71.

Eleventh Amendment immunity applies whether the relief sought is legal or equitable.

*Johns*, 57 F.3d at 1552.  The Eleventh Amendment thus shields state officials, acting in their

official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56

(10th Cir. 2007).  However, claims for injunctive and declaratory relief may, in some

circumstances, proceed against an official in his or her official capacity.[2]  *Id.*  Whether the

Eleventh Amendment provides immunity on a claim for injunctive or declaratory relief depends

on whether the relief sought is truly prospective.  *Id.* at 1258-59.  If the relief sought is actually

retrospective, it is barred by the Eleventh Amendment.  *Id.*  Thus, "[t]he Eleventh Amendment

does not permit judgments against state officers declaring that they violated federal law in the

past."  *Johns*, 57 F.3d at 1553 (citation and quotation omitted) (also noting that the Eleventh

Amendment bars notice relief in a suit against the state "unless it is ancillary to a judgment

awarding prospective injunctive relief").

---

[2] "A state official in his or her official capacity, when sued for [prospective] injunctive relief, would
be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions
against the State."  *Will*, 491 U.S. at 71 n.10 (citations and quotations omitted).

Plaintiff's claims for monetary relief against Defendants in their official capacities constitute claims against the Colorado Department of Corrections. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Therefore, to the extent Plaintiff seeks monetary relief from Defendants in their official capacities, those claims are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction. *See Starkey ex rel. A.B. v. Boulder Cnty. Soc. Serv.*, 569 F.3d 1244, 1260 (10th Cir. 2009) (noting jurisdictional nature of Eleventh Amendment sovereign immunity). Similarly, the Eleventh Amendment bars Plaintiff's request for a declaration that Defendants violated Plaintiff's civil rights. *See Johns*, 57 F.3d at 1553.

## 2.    *Eighth Amendment*

Plaintiff names Defendants Crandell and Martinez in the caption of Claim Two and invokes the Fifth, Sixth and Eighth Amendments. Plaintiff states that "Dr. Crandell, Dr. Koprivnikar, [and] Corrections Officer Sergeant Martinez were present" at his initial evaluation upon arrival at SCCF. (Compl. at 7.) He asserts that he "chose not to communicate verbally," however he indicated he would communicate in writing. (*Id.*) Plaintiff alleges that, "Defendant stated, 'If you do not speak to us you will be placed in these restraints.'" (*Id.*) He describes the restraints as "chain(s) [sic] which wrap around the waist by a paddle lock, then, cuffs [sic] each arm to each side and another chain which paddle locks between the legs." (*Id.*) He also claims

that "Defendant ordered Sargeant Martinez to place Plaintiff in restraints plus leg irons (cuffs)."[3] (*Id.*)  Plaintiff alleges that he was forced to wear restraints "each moment of a day from 9/29/08 through 10/13/08 included."  (*Id.*)  While in restraints, Plaintiff alleges that he was forced to urinate and defecate on himself and in a diaper and was denied a shower for up to six days at a time. (*Id.* at 8.)  He further asserts that following the release from restraints, he "was placed in a strip cell (10/13/2008 to 10/29/2008[4] included)."  (*Id.*)

Plaintiff names only Defendant Koprivnikar in Claim Four.  He alleges that Dr. Koprivnikar condoned the torture of Plaintiff on orders of Dr. Crandell and then "proceeded to order on 11/13/08 involuntary drugs (Abilify and Depakote) for the Plaintiff."  (*Id.* at 10.) Plaintiff asserts that the involuntary, "mind altering" medication causes short and long term side effects, including muscle tremors, memory loss, headaches, chest pains and blurry eyesight, and that additional drugs intended to address the muscle tremors have been unsuccessful.  (*Id.* at 5, 10.)  Plaintiff claims that being on involuntary drugs makes him ineligible to enter a halfway house, or change facilities and prevents early parole because Plaintiff is denied "a steady job and higher education."  (*Id.* at 5, 10.)

---

[3] In the "Nature of the Case" section of his Complaint, Plaintiff states that he "was tortured by staff because [he] did not want to speak to state employees" and that "employees followed orders of Doctor Crandell and [violated his] 5th, 6th and 8th Amend. Rights."  (Compl. at 4.)  He also asserts that he "was repeatedly tortured by staff which followed the orders of Dr. Crandell."  (*Id.* at 5.)  Taking these allegations together, the court construes Plaintiff's references to "Defendant" in Claim Two as referring to Defendant Crandell.

[4] Plaintiff's Complaint refers "10/13/2010 to 10/29/2010."  It is clear from the totality of the Complaint that he intended to provide 2008 as the year he was placed in a strip cell.

The Eighth Amendment's mandate that "cruel and unusual punishments [shall not be] inflicted," U.S. Const. amend. VIII,  "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  Today, it "prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain . . . ." *Id.*  Accordingly, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* at 347. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

What a plaintiff must allege in order to state a claim under the Eighth Amendment depends on the type of Eighth Amendment violation at issue. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  When asserting unconstitutional conditions of confinement, a prisoner must allege and prove an objective and subjective component.  "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (quoting *Rhodes*, 452 U.S. at 347).  Such necessities include shelter, sanitation, food, personal safety, medical care and clothing.  *Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994) (citing *Rhodes*, 452 U.S. at 347). A prison condition is also sufficiently serious if it constitutes a substantial risk of serious harm. *Shannon*, 257 F.3d at 1168 (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)).  "The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  The Constitution "does not mandate comfortable

prisons and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298. In other words, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

The Eighth Amendment's ban on cruel and unusual punishment is also violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 103-04.

A plaintiff alleging an Eighth Amendment violation relating to a medical need also must allege and prove an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must "know of and disregard an excessive risk to inmate health and safety." *Id.* at 837.

That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Liberally construed, the allegations in Claim Two assert an Eighth Amendment claim against Defendants Crandell and Martinez relating to his conditions of confinement arising out of Plaintiff's placement in full restraints and a strip cell. Plaintiff does not make any other allegations of torture. Plaintiffs allegations are insufficient to state a claim under the Eighth Amendment.

Defendants argue that Plaintiff has not established that the conditions of confinement were sufficiently serious. (Mot. at 8.) Without citing any case law, Defendants conclude that being deprived of a shower for up to six days is not sufficient to claim a deprivation of a basic human right. (*Id.*) Defendants also contend that Plaintiff's placement in restraints as a disciplinary measure cannot be considered a deprivation in the prison environment, particularly when Plaintiff himself acknowledges that the restraints were due to his own refusal to speak during his intake evaluation. (*Id.*) Defendants also argue that Plaintiff defecated and urinated on himself due to his refusal to verbally communicate his need to use the toilet and that Plaintiff failed to sufficiently allege that he was denied access to a toilet. (*Id.*)

The court questions Defendants' contention that the use of full restraints, twenty-four hours a day for two weeks, or the use of a strip cell, where, presumably, Plaintiff was housed with little or no clothing for two weeks, do not constitute serious deprivations which could rise to a legitimate conditions of confinement claim. Similarly, the court questions Defendants'

13

position that the alleged denial of toilet paper and a shower for up to six days at a time after

Plaintiff had urinated and defecated on himself does not implicate a basic human right such as

sanitation.  Nevertheless, even assuming that Plaintiff has alleged a sufficiently serious condition

of confinement, he does not assert that any aspect of his confinement presented a substantial risk

of serious harm or allege any facts to suggest that Defendants acted with deliberate indifference

to a substantial risk of harm.  Accordingly, Plaintiff fails to state an Eighth Amendment claim

against Defendants Crandell and Martinez.

The court construes Plaintiff's allegations against Defendant Koprivnikar—that she

placed him on involuntary drugs which cause short and long-term side effects, including muscle

tremors, memory loss, headaches, chest pains and blurry eyesight—as asserting an Eighth

Amendment claim for deliberate indifference to a serious medical need.  Defendants contend that

Plaintiff's claim is "nothing more than a disagreement with a medical or mental health diagnosis

or treatment" and argue that a difference of a opinion between a prisoner and medical staff does

not state a claim under the Eighth Amendment.  (Mot. at 10.)

The court disagrees with this argument.  Defendants cite numerous cases holding that a

prisoner does not have a constitutional right to a particular course of treatment and that a

difference of opinion between a prisoner and medical staff does not constitute an Eighth

Amendment violation.  (*See* Mot. at 10-11, citing cases.)  To the extent Plaintiff desires no

treatment at all, the court finds his claim distinguishable from those cases in which a plaintiff

desires a particular treatment and disagrees with the treatment provided.  None of the cases cited

by Defendants hold, and the court is not aware of any case that holds, that the involuntary administration of antipsychotic medication is not actionable under the Eighth Amendment as a matter of law because it reflects a mere difference of opinion.[5]  Accordingly, the court declines to recommend dismissal of Plaintiff's allegations on this basis.  The court finds that "mind-altering" medications and long-term side effects including muscle tremors and memory loss implicate a serious medical condition.

However, Plaintiff has not alleged facts to suggest that Defendant Koprivnikar was deliberately indifferent.  Although he asserts that the administration of drugs is involuntary he does not claim that Defendant Koprivnikar was deliberately indifferent in ordering involuntary drugs.[6]  Similarly, he has not alleged that Defendant Koprivnikar is deliberately indifferent to the

---

[5] The court acknowledges that in *Roper v.Grayson*, the Tenth Circuit treated the plaintiff's objection to forced administration of insulin as a difference of opinion between an inmate and medical staff that did not support an Eighth Amendment claim. 81 F.3d 124, 125 (10th Cir. 1996). The court declines to rely on this holding given the Supreme Court's recognition of the fundamental nature of a prisoner's interest with regard to mind altering medications. *See infra*.

[6] For example, Plaintiff does not allege facts to suggest that Defendant Koprivnikar prescribed involuntary medication without affording Plaintiff the appropriate process.  While the Supreme Court has recognized the "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," the Court also has acknowledged both the State's legitimate interest in prison safety and security and its "obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution." *Washington v. Harper*, 494 U.S. 210, 221-25 (1990) (citations omitted).  Thus, the Court has held that the Due Process Clause entitles a prisoner to certain procedural protections, but does not constitute an absolute bar to involuntary medication.  Plaintiff's allegations that he was not given a judicial hearing or counsel do not suggest deliberate indifference on Defendant Koprivnikar's part as neither is required by the  Due Process Clause. *See infra*.
In this vein, the court notes that evidence that Plaintiff was afforded the requisite process would undermine any allegations of deliberate indifference. The court recently held an evidentiary hearing on Plaintiff's "Motion to Stop all Involuntary-Forced Drugs" at which Defendants adduced

side effects and, in fact, acknowledges that he has been given different drugs in an effort to address the muscle tremors, albeit without success. Thus, the court finds that Plaintiff has failed to allege facts to state an Eighth Amendment claim Defendant Koprivnikar.

3.      *Right to Counsel/Access to the Courts*

In Claim Two, Plaintiff also asserts that Defendants Crandell and Martinez violated his Sixth Amendment rights. Plaintiff alleges that "Defendant ordered Sargeant Martinez to place Plaintiff in restraints plus leg irons (cuffs)." (Compl. at 7.) The court has already construed this reference to "Defendant" as referring to Defendant Crandell. Plaintiff also alleges that "during the time [he] was placed in restraints and [a] strip cell, [he] was prevented from communicating to attorney, court and family. (Jefferson County District Court, case no. 07CR2979.)" (*Id.*) He claims that he had a "court filing pending" in "07CR2979" at this time and that it was later rejected by the state court "due to filing out of time." (*Id.* at 4.)

Given Plaintiff's invocation of the Sixth Amendment and his reference to a criminal case number, it appears that Plaintiff is asserting interference with his right to counsel in a criminal

_____

evidence of Plaintiff's psychiatric treatment history at SCCF. (*See* Doc. No. 64.) Such evidence is not dispositive of the present motion, however, as dismissal proceedings are intended to challenge the legal sufficiency of the complaint only. *See Dubbs*, 336 F.3d at 1201 (noting that the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence but to assess whether the plaintiff's complaint alone is legally sufficient); *see also Arocho v. Nafziger*, 367 F. App'x 942, 952 n.12 (10th Cir. 2010) (noting district court's improper consideration of an affidavit on a motion to dismiss due to the erroneous belief that such evidence forms part of the public record subject to judicial notice). However, the evidence clearly would be applicable to a motion for summary judgment which contemplates the presentation of opposing evidence. *Arocho*, 367 F. App'x at 952 n.12.

case.  The Sixth Amendment provides, in relevant part:  "In all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const.

amend. VI.  The Sixth Amendment thus protects the right to counsel in all criminal proceedings.

To establish a Sixth Amendment violation a plaintiff must demonstrate some prejudice in his

criminal defense.  *See Shillinger v. Haworth*, 70 F.3d 1132, 1141 (10th cir. 1995) (internal

quotations and citations omitted) (discussing role of Sixth Amendment in guaranteeing

fundamental right to a fair trial).  Because a showing of prejudice necessarily implies the

invalidity of Plaintiff's conviction, the claim is barred in a § 1983 action by *Heck v. Humphrey*,

512 U.S. 477 (1994).  *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002) (finding

that Sixth Amendment claim for interference with right to counsel was not cognizable in § 1983

suit, but could be asserted in a petition for habeas corpus); *see also Horacek v. Seaman*, No.

08-10866, 2009 WL 2928546, at * 10 (E.D. Mich. Sept. 10, 2009) (unpublished) (stating that

"[t]he problem for plaintiff . . . is that . . . [a] showing of prejudice would show that he was

denied effective assistance of counsel in his criminal trial, and thus call into question the validity

of his underlying conviction . . . [and that w]here a state prisoner challenges the validity of his or

her conviction, a federal court must be on guard against upsetting the delicate balance between

state and federal judicial power by usurping the role of the state appellate courts") (citations

omitted).[7]

---

[7] *Shillinger* also recognizes certain Sixth Amendment contexts where prejudice is presumed,
including "various kinds of state interference with counsel's assistance."  *Shillinger*, 70 F.3d at
1141.  Even if Plaintiff's allegations regarding Defendants' interference with his Sixth Amendment
right to counsel constitute such circumstances, a *per se* violation of the Sixth Amendment would

Defendants construe Plaintiff's allegations in Claim Two as asserting an access to the courts claim under the First and Fourteenth Amendments. (*See* Mot. at 5-6.) Defendants argue that such a claim fails because Plaintiff has not alleged that he suffered a "distinct and palpable injury" or made "any factual allegation as to how [Defendants' alleged interference] limited his ability to litigate a non-frivolous legal matter." (*Id.* at 6.)

The Constitution guarantees prisoners the right of access to the courts "in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974) overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Lewis v. Casey*, 518 U.S. 343, 355 (1996) (noting that the Constitution guarantees inmates access to the courts only for purposes of direct or collateral attack on their sentences or to challenge conditions of their confinement and that "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration"). To state a claim for denial of such a right, a prisoner "must show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir.1996); *see also Lewis*, 518 U.S. at 349 (requiring prisoner to demonstrate "actual injury").

To the extent Plaintiff is asserting an access to the courts violation, he has not alleged sufficient facts to state a claim. Although Plaintiff does assert that he was prevented from communicating with counsel at the time a "filing was pending" and that filing was later rejected

---

imply the invalidity of Plaintiff's conviction just as much as a showing of prejudice.

as untimely (Compl. at 4), he does not indicate the nature of the filing or provide any other information to establish actual injury from the rejection of the filing. Accordingly, to the extent Plaintiff asserts an access to the court violation, it should be dismissed for failure to state a claim.

**4.      *Fifth Amendment***

Plaintiff also invokes the Fifth Amendment in Claim Two. While Claim Two contains no factual allegations to support a Fifth Amendment claim, in the context of describing Defendant Koprivnikar's order for involuntary medication in the Nature of the Case section, Plaintiff asserts that "State Employees at San Carlos Correctional have never allowed Plaintiff an attorney or a court hearing." (Compl. at 5.) Construing Plaintiff's allegations liberally, the court finds that Plaintiff intends to assert a due process claim against Defendant Koprivnikar with regard to the involuntary administration of drugs. Because the Fifth Amendment protects against actions by the federal government, the court construes this claim as asserting a violation of the Fourteenth Amendment's due process requirements. *See Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007) (noting that the difference does not affect the analysis as the "Fourteenth Amendment imposes no more stringent requirements upon state officials than does the . . . Fifth Amendment upon their federal counterparts").

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. To maintain a procedural due process claim, a plaintiff must prove that 1) the State deprived him of a

constitutionally cognizable liberty or property interest and 2) the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court has recognized "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington*, 494 U.S. at 221-22 (citations omitted). Clearly, Plaintiff sufficiently pleads the first element of a due process claim by alleging that he was placed on involuntary, mind-altering medication.

The Supreme Court has also held that due process does not require a judicial determination regarding involuntary medication, *id.* at 231-33, or the right to counsel in the appropriate administrative proceedings, *see Meza v. Livingston*, 607 F.3d 392, 406-07 (5th Cir. 2010) (parsing majority, plurality and concurring opinions in *Vitek v. Jones*, 445 U.S. 480 (1980) regarding the right to counsel in connection with involuntary mental health treatment). Thus, Plaintiff's allegations that he was never allowed an attorney or a court hearing do not suggest constitutionally deficient procedures. Accordingly, Plaintiff fails to state a due process violation and this claim should be dismissed.

**5.     PLRA**

Defendants argue that, under the PLRA, an inmate cannot recover compensatory damages absent proof of physical injury. They contend that "Plaintiff makes no allegations that

he suffered any physical injury as a result of any act or omission of any Defendant and he is not entitled to any recovery."  (Mot. at 14.)

The PLRA provides, in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e) (2008).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e) bars recovery of mental or emotional injury damages absent an allegation of physical injury, it does not bar recovery of punitive damages, injunctive relief, declaratory relief, or nominal damages.  *Id.* at 881; *Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 808 (10th Cir. 1999).

Contrary to Defendants assertions, Plaintiff does allege physical injury in that he claims that the involuntary medication causes side effects including muscle tremors, memory loss, headaches, chest pains and blurry eyesight.  (Compl. at 5, 10.)  Accordingly, the PLRA would not bar Plaintiff's request for compensatory damages as to his Eighth Amendment claim against

Defendant Koprivnikar.[8]  It does, however, bar compensatory damages in connection with any

other claim against any other defendant as Plaintiff has not alleged any other physical injury.

**6.      *Qualified Immunity***

Defendants argue that, to the extent Plaintiff is suing Defendants in their individual

capacities under § 1983, they are entitled to qualified immunity.  The doctrine of qualified

immunity shields government officials from individual liability for civil damages "insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier*

*v. Katz*, 533 U.S. 194, 201 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S.

223 (2009).

Although qualified immunity is most often raised at the summary judgment stage, the

Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to

dismiss.  *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir.

1988).  Whether raised on summary judgment or by motion to dismiss, once asserted, the burden

shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional

or statutory right and 2) that the federal right was clearly established at the time of the

---

[8] As noted, however, Plaintiff has failed to state a claim for an Eighth Amendment violation
against Defendant Koprivnikar.

challenged conduct.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646.  While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief.  *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).  Moreover, "once the defense has been raised, the court must allow the plaintiff the limited opportunity allowed in Fed. R. Civ. P. 12(b)(6) and 56 to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred."  *Losavio*, 847 F.2d at 646.

The court has determined that Plaintiff has failed to state any claims for constitutional violations.  Accordingly, Plaintiff cannot show that Defendants' alleged conduct violated any federal constitutional or statutory right and all three Defendants are entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Motion to Dismiss Plaintiff's Prisoner Complaint (Doc. #3)" (Doc. No. 24) be GRANTED and this matter be dismissed in its entirety.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of th e magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of June, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge