IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02490–PAB–KMT

JOSEPH LOUIS DURAN,

      Plaintiff,

v.

JOAN KOPRIVNIKAR, M.D.,
DENEEN CRANDELL, PSY. D., and
SGT. LEE MARTINEZ, RETIRED,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on Plaintiff's "Motion to Stop All Involuntary-Forced Drugs" (Doc. No. 35, filed 2/8/2011), Plaintiff's "Motion for Restraining Order Against Defendant Koprivnikar and Named Treatment Team Members" (Doc. No. 52, filed 3/24/2011), and Plaintiff's "Amendment to Names of Parties at Involuntary Drug Hearing on 10/25/10 to Obtain a Restraining Order [sic] Each One" (Doc. No. 56, filed 5/18/2011).  The court held an evidentiary hearing on June 7, 2011.  This matter is ripe for recommendation and ruling.

### BACKGROUND

      In this prisoner civil rights suit, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his Fifth, Sixth and Eighth Amendment rights.  (Compl. at 7-8, 10.)

Plaintiff's Eighth Amendment claim for deliberate indifference arises in part from Defendant

Koprivnikar's decision to place him on involuntary drugs, which Plaintiff claims cause side

effects including muscle tremors, memory loss, headaches, chest pains, and blurry eyesight.  (*Id.*

at 5, 10.)  In his "Motion to Stop All Involuntary-Forced Drugs," Plaintiff asks the court "to

order the Colorado Department of Mental Health to issue an order to stop all Involuntary Drugs

upon the Plaintiff."  (Doc. No. 35 [Mot.] at 1.)  The court construes this motion as a request for a

preliminary injunction.  Plaintiff filed "addenda" to his motion for a preliminary injunction on

February 16, 2011 (Doc. No. 42 [Add. 1]) and on March 1, 2011 (Doc. No. 45).  In his "Motion

for Restraining Order Against Defendant Koprivnikar and Named Treatment Team Members,"

Plaintiff seeks a restraining order against Defendant Koprivnikar and members of the team who

authorized the administration of involuntary drugs on October 25, 2010.  (Doc. No. 52 at 1.)  In

Plaintiff's "Amendment to Names of Parties at Involuntary Drug Hearing on 10/25/10 to Obtain

a Restraining Order [sic] Each One," he seeks to amend the names of the treatment team

members named in Docket No. 52.  (Doc. No. 56.)

 Plaintiff claims that he is experiencing side effects due to "involuntary forced drugs."

(Mot. at ¶ 1.)  He believes that the involuntary drugs are for behavior that occurred more than

two years ago and he claims that he "was never taken into court to force drugs on [him and] there

has never been a court order to allow such thing on a U.S. citizen (naturalized)."  (*Id.* at ¶¶ 5, 9.)

Among the side effects is "tardive diskenisia [sic],"[1] a shaking on the left side of his body,

---

[1] According to TardiveDyskinesia.com, tardive dyskinesia, a movement disorder similar
to Tourette syndrome, is a side effect of psychoactive medications.  Tardive Dyskinesia

which, he alleges, may become permanent. (*Id.* at ¶¶ 1, 7.) Plaintiff asserts that, since 2008, he has received three types of drugs intended to treat the side effects from the "involuntary forced drugs," but without success. (*Id.* at ¶ 3.) Plaintiff argues that Defendant Koprivnikar's administration of "involuntary forced drugs" is part of his prisoner complaint and he will never be able to prove that the tardive dyskinesia is permanent unless he is taken off the involuntary forced drugs." (Add. 1 at 1.)

On March 9, 2011, Defendants filed a response to Plaintiff's Motion to Stop All Involuntary-Forced Drugs.[2] (*See* Doc. No. 49 [Resp.].) Defendants argued that Plaintiff had failed to show that he will suffer irreparable injury in the absence of injunctive relief because Plaintiff's assertion that the side effects "may become permanent" is speculative. (*Id.* at 3.) Defendants also argued that Plaintiff had not established a substantial likelihood of success on the merits because differences of opinion between a prisoner and medical staff do not constitute deliberate indifference to a serious medical need. (*Id.*) Notably, Defendants did not deny Plaintiff's allegations regarding the involuntary administration of drugs and Defendants offered no evidence for the court's consideration.

_____

Treatment, TardiveDyskinesia.com, http://www.tardivedyskinesia.com/treatment (last visited 6/17/2011); *see also Washington v. Harper*, 494 U.S. 210, (1990) (defining tardive dyskinesia as "a neurological disorder, irreversible in some cases, that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face" and noting that it is "perhaps the most discussed side effect of antipsychotic drugs").

[2] The court notes that Defendants' response to Plaintiff's request for a preliminary injunction was untimely and that Defendants did not respond to Plaintiff's request for a temporary restraining order.

Being unpersuaded by Defendants bare arguments without evidentiary support, the court set the matter for an evidentiary hearing and ordered Defendants to "make available at the hearing an individual with knowledge of Plaintiff's medical treatment, including any hearings regarding the involuntary administration of drugs, including any hearing on or about October 25, 2010" which Plaintiff had referenced in his request for a temporary restraining order.  (Doc. No. 55.)  The court also ordered Defendant to provide the court with documents pertaining to the administration of involuntary drugs.  (*Id.*)

## EVIDENCE PRESENTED

The court held an evidentiary hearing on June 7, 2011.  Plaintiff called Dr. Richard Phelps as a witness.[3]  Dr. Phelps confirmed that lab tests from May 3, 2011 reflected that Plaintiff's cholesterol and liver enzyme readings were high and that lab tests from May 13, 2011 reflected that the cholesterol and liver enzyme readings went down.  He stated that Dr. Toepp, Plaintiff's treating physician, had reduced Plaintiff's Depakote prescription during this period and intended to continue tapering Plaintiff's Depakote levels so that he would be off Depakote by July 7, 2011.  Dr. Phelps testified that Plaintiff has some shaking on his left side, but did not shake when Dr. Phelps first met him.  He also stated that Dr. Toepp did not want to discontinue Risperdal because she felt Plaintiff was bi-polar.  Finally, Dr. Phelps testified that a diagnosis of bi-polar, alone, is not grounds for involuntary medication.

---

[3] As a person incarcerated, Plaintiff participated in the evidentiary hearing by telephone. Dr. Phelps and Plaintiff's case manager were present with him on the phone.  The nature of Dr. Phelps' relationship with Plaintiff was never explained to the court.

On cross-examination, Dr. Phelps testified that Plaintiff had not cooperated in the intake evaluation when he first came to SCCF and the facility had to decide whether to keep him in restraints for security reasons.  Plaintiff was disruptive with rapid and loud speech, consistent with bi-polar disorder.  He defecated on himself and on the floor while restrained and defecated and urinated on the floor when he was not restrained.  Because of this, Plaintiff was determined gravely disabled as a threat to himself.  Dr. Phelps stated that the decision to involuntarily medicate Plaintiff was based primarily on Plaintiff's behavior and not on the bi-polar diagnosis. Dr. Phelps also testified that shaking is a common side effect of Depakote, and, when Dr. Toepp noticed this, she wanted to see if it could be eliminated by tapering Plaintiff off of Depakote.

On re-direct, Dr. Phelps testified that the restraints used are full restraints, which wrap around the waist and through the legs.  He acknowledged that it is difficult to use the bathroom while in the restraints and that the inmates are given relief every two hours but if they do not use the bathroom at that time, they must wait another two hours.

Defendants offered ten exhibits into evidence.  These include the Colorado Department of Corrections' (CDOC) Administrative Regulations regarding the involuntary administration of medication (Ex. A-1), the Minutes and Decision from a 180-Day Involuntary Medication Hearing Committee (Ex. A-2), Plaintiff's SCCF Treatment Plan (Ex. A-3) and various ambulatory health records for Plaintiff (Exs. A-4 to A-10).  While Plaintiff objected to the accuracy of certain details contained in the exhibits, he did not object to their authenticity or

their admission into evidence.[4]  The court noted that Plaintiff's objections were not relevant to

the issue before the court and admitted the exhibits for purposes of the hearing only.[5]  Although

Defendants had indicated that Defendant Koprivnikar would be called as a witness, Defendants

did not call her.[6]

## LEGAL STANDARD

Because Plaintiff is proceeding *pro se*, the court "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  To obtain a preliminary

injunction, Plaintiff must establish (1) a substantial likelihood that he will eventually prevail on

the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the

---

[4] Plaintiff also objected that he had only received the proposed exhibits from Defendants on June 6, 2011, the day before the hearing, and that they were postmarked June 2, 2011, contrary to the court's explicit order that Defendants "provide the court and Plaintiff with any documents they intend to use as exhibits" no later than May 31, 2011.  (Doc. No. 55.)  The court notes that it also received the proposed exhibits from Defendants on June 2, 2011, in contravention of its order, and without adequate explanation for the delay.  The court is utterly unimpressed with Defendants' defense of this case and failure to comply with court orders.

[5] For example, Plaintiff alleged errors in his medical records relating to certain biographical information and his criminal history.

[6] Defense counsel indicated that Defendant Koprivnikar could not appear in person but could be summoned on her pager to call the court to testify by phone.  The court indicated that, because Plaintiff was appearing by phone, the court could not receive an additional call from Defendant Koprivnikar.  The court notes that despite Defendants' expressed intent to call Defendant Koprivnikar as a will-call witness, Defendants did not contact the court prior to the hearing to confirm the court's technical capabilities for her appearance by phone.

threatened injury outweighs whatever damage the proposed injunction may cause the opposing

party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Lundgrin*

*v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).  The Tenth Circuit has made it clear that "because a

preliminary injunction is an extraordinary remedy, the right to relief must be clear and

unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070

(10th Cir. 2009) (internal quotation and citation omitted).  Consequently, granting such drastic

relief is the exception rather than the rule. *See id.* (citations omitted).  Where the opposing party

has notice, as in this case, the procedure and standards for issuance of a restraining order mirror

those for a preliminary injunction. *Emmis Commc'ns Corp. v. Media Strategies*, No. Civ. A.

00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001).

## ANALYSIS

### 1.     *Irreparable injury*

Plaintiff claims that he is experiencing side effects, including shaking on the left side of

his body, from the involuntary medication, which he fears may become permanent.  (Mot. at ¶¶

1, 7.)  Defendants argue that Plaintiff's assertion that the shaking "may become permanent" is

too speculative to support a preliminary injunction.  (Resp. at 3.)  However, Plaintiff also notes

that, given the nature of his injury, he will never be able to prove that the shaking is permanent

unless he is taken off the involuntary drugs.  (Add. 1 at 1.)

Dr. Phelps confirmed that Plaintiff is experiencing shaking and that shaking is a common

side effect of Depakote, one of Plaintiff's involuntary medications.  Observations regarding mild

shaking or tardive dyskinesia in Plaintiff's left hand and arm appear off and on in Plaintiff's

ambulatory health records since December of 2009.  (*See* Exs. A-4, A-5, A-9).  The court

concludes that this factor does not weigh strongly in favor of or against an injunction.

**2.     *Likelihood of success on the merits***

The Eighth Amendment's ban on cruel and unusual punishment is violated if a

defendant's "deliberate indifference to serious medical needs of prisoners constitutes the

unnecessary and wanton infliction of pain."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A claim for deliberate indifference has

both an objective and a subjective component.  To satisfy the objective component, a prisoner

must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d

1220, 1224 (10th Cir. 1999) (citation omitted).  To satisfy the subjective component, a prisoner

must demonstrate that prison officials acted with a "sufficiently culpable state of mind."

*Farmer*, 511 U.S. at 834.  The officials must "know of and disregard an excessive risk to inmate

health and safety."  *Id.* at 837.  That is, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Id.*

As described in more detail in the courts' Recommendation on Defendants' Motion to

Dismiss filed concurrently with the present Recommendation, the court does not agree with

Defendants that Plaintiff's allegations fall under the line of cases holding that an inmate's

8

disagreement with medical staff regarding a course of treatment does not give rise to an Eighth

Amendment violation.  (*See* Doc. No. 67.)  The court considers Plaintiff's desire for no treatment

at all distinguishable from those cases in which an inmate complains that he is not receiving the

particular course of treatment he desires.  Nevertheless, assuming that the administration of

mind-altering medication and potentially permanent side effects implicate a sufficiently serious

medical need, the court has determined that Plaintiff's allegations fail to state a claim against

Defendant Koprivnikar because he does not allege facts suggesting deliberate indifference on her

part.  Thus, the court concludes that Plaintiff is unlikely to succeed on the merits.  The evidence

presented at the evidentiary hearing further undermines the viability of Plaintiff's Eighth

Amendment claim against Defendant Koprivnikar.

Exhibit A-1 is the Colorado Department of Corrections Administrative Regulation 700-

23 (AR 700-23) regarding the involuntary administration of medication.  According to AR 700-

23, "For involuntary medication to be approved, it must be demonstrated that the offender

suffers from a mental disorder and, as a result of the disorder, constitutes a serious threat of harm

to self or others, or is gravely disabled and that it is in the offender's medical interest."  (Ex. A-1

at IV.A.1.)  Gravely disabled is defined as "[a] condition in which individuals, as a result of

mental illness are . . . [l]acking in judgment in the management of their resources and in the

conduct of their social relations to the extent that their health or safety is significantly

endangered and they lack the capacity to understand that this is so."  (*Id.* at III.D.)  AR 700-23

also provides that "psychotropic medications will be administered involuntarily only when due

process is followed . . . ."  (*Id.* at IV.A.3.)  The process contemplates an initial hearing, a 14-day

review hearing, and subsequent review hearings every 180 days. (*Id.* at IV.C.2, 3 and 4.) An inmate's procedural rights include the right to receive written notice prior to the hearing, to have an opportunity to be present and to be heard in person at the hearing, to present evidence including witnesses at the hearing and to cross-examine the witnesses called by the facility, to have a designated representative advise him during the hearing process, and the right to appeal. (*Id.* at IV.C.1.a.)

The following description is taken from Defendant Koprivnikar's "Psychiatrist's Report for Involuntary Medication Hearing" and indicates that, when Plaintiff arrived at SCCF in September 2008, he refused to speak and indicated he wished to communicate by writing. (Ex. A-2.) He was placed in a strip cell with ambulatory restraints because he could not be assessed for dangerousness. On September 29, 2008, he defecated in his boxers, necessitating a diaper. The next day he defecated on the floor. In October he began to talk to staff and presented as paranoid and agitated. Staff reported that he spent a lot of time lecturing loudly to no one. The ambulatory restraints were discontinued on October 13, 2008. On October 19, 2008, he was allowed a shower but immediately began complaining about the water temperature and banging on the shower door. On October 22, 2008, his behavior and affect reflected agitation and paranoia. Staff noted that he slept very little and was agitated and yelling much of the day. On October 29, 2008, he was released from the strip cell because staff felt that he was not a danger to himself. On October 31, 2008, psychiatry considered Plaintiff hypomanic, perseverative on his legal issues and with formal thought disorder. On November 6, 2008, Plaintiff did not sleep all night and was up yelling profanities and throwing water under his door. Also, he had been

10

urinating and defecating on the floor.  He was hostile and threatening to spit on staff and screaming at the Major.  Staff noted that he had been escalating for several days and was only sleeping approximately four hours each night.  He was placed in four-point restraints, mitts and a safety strap.  On November 9, 2008, he was described as very surly with open hostility and on November 10, 2008, as volatile and unpredictable.  On November 11, 2008, he smeared feces all over his body and the floor.

It appears that Plaintiff was first placed on involuntary medications at this time. Defendant Koprivnikar's report indicates that she considered him a serious threat to others and gravely disabled.  The report states "[Plaintiff] has shown himself to be extremely unpredictable, delusional, psychotic and manic.  That he has not hurt someone is very likely secondary to the fact that he has been in strip cell +/- ambulatory restraints for the majority of his time at SCCF. Smearing feces all over his body shows grave disability."  (Ex. A-2.)  Defendant Koprivnikar then recommended that involuntary medications be continued for fourteen days, and subsequently recommended that they be continued for an additional 180 days on November 20, 2008, May 12, 2009, November 3, 2009, April 23, 2010, and October 21, 2010.  (*Id.*)

Plaintiff's ambulatory health records provided by Defendants indicate that he complained of shaking in his left hand in December 2009, but it had decreased with a reduction in Abilify. (Ex. A-4.)  Defendant Koprivnikar continued to reduce the medication Abilify over the next several months.  (*See* Exs. A-4, A-5, A-6.)  It was discontinued in April 2010.  (Ex. A.6.)  A note in Plaintiff's May 13, 2010 record indicates that he had been off all antipsychotics for 2.5 months.  (Ex. A-7.)  Subsequent to this assessment, Plaintiff became more paranoid and

11

psychotic and began provoking other offenders and Abilify was restarted on June 10, 2010. (Ex. A-8.)

A 180-Day review was held on October 25, 2010. (Ex. A-2.) All members of the Involuntary Medication Hearing Committee considered Plaintiff a serious threat of harm to others and gravely disabled and recommended that involuntary medications be continued. (*Id.*) Plaintiff's medical records indicate that he refused to attend the hearing (Exs. A-2, A-10.) At the evidentiary hearing on June 7, 2011, Plaintiff confirmed that he refused to attend the October 2010 hearing or a hearing held "about one month ago"[7] because he refused to be restrained.

Although Plaintiff complains that "he was never taken into court to force drugs on [him]"[8] he does not bring a due process claim against the CDOC's procedures for involuntary medication. The Supreme Court has held that due process does not require a judicial determination regarding involuntary medication. *Washington*, 494 U.S. at 221-22 (citations omitted). The evidence presented at the evidentiary hearing suggests that the decision to place and keep Plaintiff on involuntary medication was made in accordance with the CDOC's Administrative Regulations and was based on a determination that Plaintiff is a serious threat to others and is gravely disabled. More importantly for purposes of Plaintiff's Eighth Amendment claim, the evidence suggests that Defendant Koprivnikar has assessed Plaintiff's mental health

---

[7] Although Defendants did not provide documentation after October 2010, by the courts' calculation, another 180-Day review should have occurred on or about April 23, 2011.

[8] Plaintiff apparently distinguishes his administrative hearings from proceedings before a state or federal court.

needs, has taken into account his complaints of shaking in his left hand and arm, and has attempted to address this by reducing his involuntary medication, but has recommended the continuation of involuntary medication based on Plaintiff's mental health needs and the institutional considerations of security.  Because these facts undermine Plaintiff's claim of deliberate indifferent, the court concludes that Plaintiff's likelihood of success on the merits is small.

3.      ***Balance between injury and damage to opposing party***

In the context of the involuntary administration of antipsychotic drugs, the Supreme Court has noted the State's legitimate interest in prison safety and security and its "obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution."  *Washington*, 494 U.S. at 221-25 (citations omitted). The Court has also repeatedly recognized that "prison authorities are best equipped to make difficult decisions regarding prison administration."  *See, e.g.*, *id.* at 223-24.  Moreover, in deciding that due process does not require a judicial determination for involuntary medication, the Court noted that "[t]he mode and procedure of medical diagnostic procedures is not the business of judges."  *Id.* at 232 (internal quotation and citation omitted).  Thus, the court concludes that the State's interest in a medical determination regarding the involuntary administration of drugs based on Plaintiff's medical needs as well as institutional considerations of safety and security, outweighs the potential injury to Plaintiff in this case.

13

*4.     Public interest*

Similarly, the court concludes that the public interest weighs in favor of deferring to prison officials and mental health staff regarding the mental health treatment of the incarcerated population.

On balance, these factors weigh against the issuance of a preliminary injunction.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Plaintiff's "Motion to Stop All Involuntary-Forced Drugs" (Doc. No. 35) be DENIED, and further

RECOMMENDS that Plaintiff's "Motion for Restraining Order Against Defendant Koprivnikar and Named Treatment Team Members" (Doc. No. 52) be DENIED, and further

RECOMMENDS that Plaintiff's "Amendment to Names of Parties at Involuntary Drug Hearing on 10/25/10 to Obtain a Restraining Order [sic] Each One" (Doc. No. 56) be DENIED AS MOOT.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

     Dated this 27th day of June, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge